## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

| | | |
|---|---|---|
| **TONYA R. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:**_____ |
| | ) | |
| **WELLNESS PLAN OF** | ) | **JURY DEMAND** |
| **AMERICA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, TONYA R. BROWN (hereinafter "Plaintiff"), by and through her undersigned counsel, and hereby files this lawsuit against Defendant, WELLNESS PLAN OF AMERICA, LLC, (hereinafter "Defendant" or Wellness Plan of America") and states as follows:

### JURISDICTION AND VENUE

1.      This is an action by Plaintiff, Tonya R. Brown, for compensatory and punitive damages,  declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. §§ 1981, 1983 (collectively "§ 1981"), the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq.*, to redress injury caused by Defendants' disparate treatment based on her race, retaliation against her protected conduct, hostile work environment based on her race.  This is also an action for compensatory and punitive damages, declaratory, and injunctive relief under Title VII, § 1981, and the FCRA.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, Title VII and § 1981. This Court has supplemental jurisdiction of the Florida Civil Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367.  Declaratory, injunctive,

legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.    Wellness Plan of America, LLC (WPA) employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.    Venue is proper in Palm Beach County (28 U.S.C. § 89(c)), because  Wellness Plan of America does business in Palm Beach County, and some or all of the acts alleged herein took place in Palm Beach County.

5.    Defendant Wellness Plan of America, LLC's principal place of business is in Palm Beach County, at 791 Park of Commerce Blvd, Suite 201, Boca Raton, Florida 33487.

6.    Plaintiff is a resident of Broward County, and her address is located in the city of Lauderhill, Florida.

7.    All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

8.    On or about July 20, 2018, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC"), to start the process of filing an EEOC Charge, including providing pre-charge inquiry information.  On or about that date, Plaintiff notified WPA she had contacted the EEOC and was in the process of filing a Charge.  On August 17, 2018, Plaintiff revised her initial charge, filing a formal Charge of Discrimination with the EEOC and the Florida Commission on Human Relations, Charge No. 510-2018-05715.  A true and correct copy of Plaintiff's August 17, 2018 Charge is attached hereto as Exhibit A.

9.      On June 11, 2018, Plaintiff received a copy of the EEOC's Right-To-Sue Letter dated June 7, 2019.  Suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is attached hereto as Exhibit B.

## GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff, a black female, was hired by WPA on or about March 14, 2018, to work as a "prescription specialist" at its West Palm Beach location.

11.     When hired, Plaintiff's immediate supervisor was Adam Fallick (white male), briefly became Jisenolla Martin (black female) before her termination, and then went back to Fallick (at least as of June 2018).

12.     Fallick's supervisor is Randa Atem-Allam, non-black female.

13.     Charlie Kane, white male, was Atem-Allam's supervisor.

14.     Kane's supervisors are the owners of WPA, Marvin Hilf, white male, Melissa Hilf, white female, and Michael Hilf, white male.

15.     Plaintiff worked in WPA's call center, typically from 9 a.m. to 6 p.m., Monday through Friday.

16.     Fallick used racial slurs toward black employees, including referring to blacks, including Plaintiff, as "monkeys."

17.     One day when another black employee ate the last banana in the break room, Fallick said to Plaintiff and others "you know them black monkeys love bananas."

17.     Fallick also said that "because he is Caucasian he can get away with a lot more."

18.     Fallick said that "hopefully blacks would be kicked out of the United States" and go to Africa.

19.     On information and belief, WPA, through its managers and agents, treated blacks and black females less favorably than other employees outside of those protected classes, by rating Plaintiff lower on performance reviews.

20.     In or around June 2019, Atem-Allam told Plaintiff that she wanted Plaintiff to learn all that she could learn about Fallick's position because once Fallick was written up, he would be terminated and Plaintiff would be considered to replace him at his position.

21.     Prior to her complaint to Atem-Allam, Plaintiff heard Atem-Allam say, "I have a real problem with how Adam [Fallick] talks to people," and that "he is nothing but trouble."

22.     On or about June 13, 2018, Plaintiff complained to Atem-Allam about Fallick's behavior.

23.     Atem-Allam did not get back to Plaintiff after she complained, except to call Plaintiff a "Hoe" in responding to her via intra-office chat on June 14, 2018.

24.     On or about July 19, 2018, Plaintiff complained to Kane that she felt she was being discriminated against because of her race, including concerning Fallick, and Kane stated he would look into it and get back to Plaintiff and that Plaintiff should speak to Michael Hilf the following Monday.

25.     On or about July 23, 2019, Plaintiff complained to Michael Hilf about Fallick and his discriminatory statements.

26.     Neither Michael Hilf nor Kane got back to Plaintiff after she complained concerning her complaints nor did they start an investigation.

27.     On or about July 20, 2018, Plaintiff provided a written complaint to the EEOC, styled "revised complaint," outlining her complaints against Fallick and her previous internal complaints.

SALAS LAW FIRM, P.A.

28.     In the written complaint, Plaintiff informed the EEOC that Atem-Allam told her that Kane's role included protecting Fallick from complaints.

29.     It is also Plaintiff's understanding that Martin was terminated for complaining about Fallick's discriminatory statements and behavior.

30.     Before Martin was terminated, Fallick, a fellow supervisor, said that there were no black persons under his supervision / on his team in order to "divide and conquer."

31.     Before Martin was terminated in response to a question about why there were no black persons on his team, he said "cause that is what we do."

32.     Around July 20, 2018, Plaintiff informed Mary Adams (white female and one of Defendant's managers) that Plaintiff "filed a charge with the Miami EEOC office."

33.     In reality, Plaintiff started the process of filing the charge but had yet to file the charge itself; however, that was her understanding of the status of the EEOC complaint at the time.

34.     On July 23, 2018, Plaintiff was called into a meeting with Atem-Allam, Marvin Hilf, and Don Ackerman (white male, another WPA manager).

35.     They told Plaintiff she was being called into discuss the EEOC Charge.

36.     At the time, Plaintiff's understanding was that the EEOC would provide her with representation concerning WPA, unless she had retained a private attorney.

37.     Plaintiff told them she felt it inappropriate to respond to their additional questions until the representation issue was resolved, one way or the other, and asked them for more time to respond or to answer in writing, and to await further information from the EEOC.

38.     Marvin Hilf responded "well, if you can't talk about it, you can't talk about it, go back to your desk."

39.     Soon after the meeting, Atem-Allam told Plaintiff that WPA was placing her on one day of administrative leave (which occurred on July 24, 2018) while it conducted an investigation into the charge allegations.

40.     Also on July 23, 2018, at 10:05 p.m., Atem-Allam emailed Plaintiff, "We have arranged for you not to report to Adam Fallick because you mentioned to me during our phone call this evening that your lawsuit and EEOC claim is about him and discrimination."

41.     Atem-Allam also told Plaintiff to return the next day to work, July 24, 2018 at 9:00 a.m.

42.     Plaintiff did not read the email until around noon the next day, and informed Atem-Allam via email that she would be in the next day, July 25th, at the normal start time, 9:00 a.m.

43.     Atem-Allam emailed Plaintiff back on July 24th at 7:50 p.m. stating, "correction on your email below, WPA was not conducting an investigation of an EEOC Charge allegation, that is a separate matter between you and the EEOC."

44.     Plaintiff believes the unpaid administrative leave, effectively a suspension, and handling of WPA's communications about her return to work was in retaliation for her internal complaints (and external via the EEOC Charge process) of discrimination.

45.     On July 25, 2018, Plaintiff arrived at work at the regular start time, 9:00 a.m.

46.     Fallick's desk remained directly behind Plaintiff's.

47.     Soon after arriving at work, Plaintiff was told to go to the conference room with Adams, Atem-Allam, and Kane.

48.     Kane asked whether Plaintiff had retained an attorney regarding the EEOC charge.

49.     Plaintiff told Atem-Allam and Kane she had yet to retain an attorney, but was in the process of finding and retaining one.

50.     Plaintiff was then asked by Marvin Hilf and Adams to explain the EEOC charge information and her complaint of discrimination. RECORDING – never gave permission.

51.     Plaintiff responded that the complaints were outlined in the writeup she had submitted to the EEOC, and WPA confirmed they had a copy of the Charge writeup (the written "revised complaint") to review.

52.     Atem-Allam and Kane continued to press Plaintiff for information, and she referred them to the Charge writeup, but that she would answer any questions they had in writing, pending the retention of counsel.

53.     Atem-Allam then said, "so you are refusing to participate in the investigation, and you will be terminated."

54.     Plaintiff told WPA that she was not refusing to participate, but rather trying to utilize her written complaint previously filed, and would respond in writing to any questions, pending the retention of counsel.

55.     WPA's inconsistent and shifting statements, in both emails and verbally, regarding whether it was conducting an investigation into her EEOC charge allegations, further indicated to Plaintiff that she should wait until she received some information from the EEOC or a private attorney on how to proceed.

56.     On July 30, 2018, Plaintiff received a letter from WPA which included the following statement: "The decision of your involuntary termination was strictly based on your refusal, on July 25, 2018, to participate in an internal workplace investigation."

57.     Plaintiff told WPA as she left the meeting that she considered the termination also retaliatory, including for filing internal complaints and for contacting the EEOC.

58.     Plaintiff believes WPA engaged in disparate treatment of her, retaliated against her, and subjected her or allowed her to be subject to a racially hostile work environment.

**<u>Count I – Title VII Disparate Treatment (Termination – Race And/Or Sex)[1]</u>**

59.     Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

60.     Plaintiff has completed all necessary pre-requisites to bringing her claims under the Title VII, § 1981, and the FCRA.

61.     Plaintiff is a member of a protected class(es), a black female.

62.     Plaintiff was qualified for her position.

63.     Plaintiff suffered an adverse employment action(s), including being terminated unlawfully by WPA when other non-black employees and males were not.

64.     Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees and males, were treated more favorably than her in the terms and conditions of their employment.

65.     WPA intended to discriminate and did discriminate on the basis of race and/or sex.

66.     WPA discrimination concerned one or more of the activities enumerated in Title VII.

67.     As a result of the aforementioned conduct, WPA violated Title VII.

68.     Any purported legitimate reason for Plaintiff's reduction in hours and transfer given by WPA is, in reality, a pretext for unlawful discriminatory treatment.

69.     As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in being terminated.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

70.     WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

71.     Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

72.     As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count II – Title VII Disparate Treatment (Suspension – Race And/Or Sex)

73.     Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

74.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

75.     Plaintiff is a member of a protected class(es), a black female.

76.     Plaintiff was qualified for her position.

77.     Plaintiff suffered an adverse employment action(s), including being placed on administrative leave on July 24, 2018 after complaining of discrimination to WPA managers.  To the extent necessary, Plaintiff avers that WPA's decision to tell her on July 23, 2018 that it was placing her on administrative leave for a day and then at 10:05 p.m. via email to tell her she had to come into work at 9:00 a.m. on July 24, 2018, is an example of its pretextual reasons for its actions against her.

78.     Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees and males, were treated more favorably than her in the terms and conditions of their employment.

79.     WPA intended to discriminate and did discriminate on the basis of race.

80.     WPA discrimination concerned one or more of the activities enumerated in Title VII.

81.     As a result of the aforementioned conduct, WPA violated Title VII.

82.     Any purported legitimate reason for Plaintiff's suspension is, in reality, a pretext for unlawful discriminatory treatment.

83.     As a direct and proximate result of WPA's conduct, Plaintiff suffered an adverse employment actions in being suspended on July 23, 2018 effective on July 24, 2018.

84.     WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

85.     Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

86.     As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**<u>Count III – Title VII Retaliation (Failure To Investigate, Suspension & Termination)</u>**

87.     Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

88.     Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

89.     Plaintiff engaged in a statutorily protected activity(ies), complaining to WPA through Atem-Allam in June 2018, to Kane in early July 2018, and on July 20, 2018 to all of WPA, including that she had filed or was in the process of filing an EEOC Charge.

90.     Plaintiff suffered an adverse employment action(s), suspension on July 24, 2018 and termination on July 25, 2018. Plaintiff also suffered an adverse employment action because Defendant failed to investigate her race discrimination complaints in June and July 2018 and only, purportedly, did investigate after Plaintiff went to the EEOC.

91.     There is or are a casual connection(s) between Plaintiff's complaints of discrimination in June and July 2018, including about Fallick's racist comments, and, less than one month later, being suspended and terminated.

92.     WPA intended to retaliate and did retaliate on the basis of race or sex and/or because Plaintiff filed internal and external complaints.

93.     WPA's retaliation concerned one or more of the activities enumerated in Title VII.

94.     As a result of the aforementioned conduct, WPA violated Title VII.

95.     Any purported legitimate reason for Plaintiff's discipline given by WPA is, in reality, a pretext for unlawful retaliatory treatment.

96.     As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in reduction in hours and transfer resulting in her suffering injury and being damaged.

97.     WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

98.     Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of retaliation based on her race and/or that the violations of her rights were continuing in nature by WPA.

99.     As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IV – 42 U.S.C. § 1981 Disparate Treatment (Termination)

100.    Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

101.    Plaintiff is a member of a protected class(es), a black female.

102.    Plaintiff was qualified for her position.

103.    Plaintiff suffered an adverse employment action(s), including being terminated unlawfully by WPA when other non-black employees were not.

104.    Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees, were treated more favorably than her in the terms and conditions of their employment.

105.    WPA intended to discriminate and did discriminate on the basis of race.

106.    WPA discrimination concerned one or more of the activities enumerated in § 1981.

107.    As a result of the aforementioned conduct, WPA violated § 1981.

108.    Any purported legitimate reason for Plaintiff's reduction in hours and transfer given by WPA is, in reality, a pretext for unlawful discriminatory treatment.

109.    As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in being terminated.

110.    WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

111.    Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

112.    As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count V – § 1981 Disparate Treatment (Suspension)

113.    Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

114.    Plaintiff is a member of a protected class(es), a black female.

115.    Plaintiff was qualified for her position.

116.    Plaintiff suffered an adverse employment action(s), including being placed on administrative leave on July 24, 2018 after complaining of discrimination to WPA managers.  To the extent necessary, Plaintiff avers that WPA's decision to tell her on July 23, 2018 that it was placing her on administrative leave for a day and then at 10:05 p.m. via email to tell her she had to come into work at 9:00 a.m. on July 24, 2018, is an example of its pretextual reasons for its actions against her.

117.    Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees and males, were treated more favorably than her in the terms and conditions of their employment.

118.    WPA intended to discriminate and did discriminate on the basis of race.

119.    WPA discrimination concerned one or more of the activities enumerated in § 1981.

120.    As a result of the aforementioned conduct, WPA violated § 1981.

121.    Any purported legitimate reason for Plaintiff's suspension is, in reality, a pretext for unlawful discriminatory treatment.

122.    As a direct and proximate result of WPA's conduct, Plaintiff suffered an adverse employment actions in being suspended on July 23, 2018 effective on July 24, 2018.

123.    WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

124.    Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

125.    As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### <u>Count VI – § 1981 Retaliation (Failure to Investigate, Suspension & Termination)</u>

126.    Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

127.    Plaintiff engaged in a statutorily protected activity(ies), complaining to WPA by through Atem-Allam in June 2018, to Kane in early July 2018, and on July 20, 2018 to all of WPA, including that she had filed or was in the process of filing an EEOC Charge.

128.   Plaintiff suffered an adverse employment action(s), suspension on July 24, 2018 and termination on July 25, 2018. Plaintiff also suffered an adverse employment action because Defendant failed to investigate her race discrimination complaints in June and July 2018 and only, purportedly, did investigate after Plaintiff went to the EEOC.

129.   There is or are a casual connection(s) between Plaintiff's complaints of discrimination in June and July 2018, including about Fallick's racist comments, and, less than one month later, being suspended and terminated.

130.   WPA intended to retaliate and did retaliate on the basis of race or sex and/or because Plaintiff filed internal and external complaints.

131.   WPA's retaliation concerned one or more of the activities enumerated in § 1981.

132.   As a result of the aforementioned conduct, WPA violated § 1981.

133.   Any purported legitimate reason for Plaintiff's discipline given by WPA is, in reality, a pretext for unlawful retaliatory treatment.

134.   As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in reduction in hours and transfer resulting in her suffering injury and being damaged.

135.   WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

136.   Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of retaliation based on her race and/or that the violations of her rights were continuing in nature by WPA.

137.   As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a

minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VII – FCRA Disparate Treatment (Termination – Race And/Or Sex)[2]

138.  Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

139.  Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

140.  Plaintiff is a member of a protected class(es), a black female.

141.  Plaintiff was qualified for her position.

142.  Plaintiff suffered an adverse employment action(s), including being terminated unlawfully by WPA when other non-black employees and males were not.

143.  Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees and males, were treated more favorably than her in the terms and conditions of their employment.

144.  WPA intended to discriminate and did discriminate on the basis of race and/or sex.

145.  WPA discrimination concerned one or more of the activities enumerated in the FCRA.

146.  As a result of the aforementioned conduct, WPA violated the FCRA.

147.  Any purported legitimate reason for Plaintiff's reduction in hours and transfer given by WPA is, in reality, a pretext for unlawful discriminatory treatment.

148.  As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in being terminated.

---

[2] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

149.    WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

150.    Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

151.    As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count VIII – FCRA Disparate Treatment (Suspension – Race And/Or Sex)**

152.    Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

153.    Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

154.    Plaintiff is a member of a protected class(es), a black female.

155.    Plaintiff was qualified for her position.

156.    Plaintiff suffered an adverse employment action(s), including being placed on administrative leave on July 24, 2018 after complaining of discrimination to WPA managers.  To the extent necessary, Plaintiff avers that WPA's decision to tell her on July 23, 2018 that it was placing her on administrative leave for a day and then at 10:05 p.m. via email to tell her she had to come into work at 9:00 a.m. on July 24, 2018, is an example of its pretextual reasons for its actions against her.

157.     Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including non-black employees and males, were treated more favorably than her in the terms and conditions of their employment.

158.     WPA intended to discriminate and did discriminate on the basis of race.

159.     WPA discrimination concerned one or more of the activities enumerated in the FCRA.

160.     As a result of the aforementioned conduct, WPA violated the FCRA.

161.     Any purported legitimate reason for Plaintiff's suspension is, in reality, a pretext for unlawful discriminatory treatment.

162.     As a direct and proximate result of WPA's conduct, Plaintiff suffered an adverse employment actions in being suspended on July 23, 2018 effective on July 24, 2018.

163.     WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

164.     Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of disparate treatment based on her race and/or that the violations of her rights were continuing in nature by WPA.

165.     As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages, including damages for her emotional distress. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count IX – Title VII Retaliation (Failure To Investigate, Suspension & Termination)**

166.     Plaintiff realleges and incorporates paragraphs 1 to 58 as if fully set forth herein.

167.    Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

168.    Plaintiff engaged in a statutorily protected activity(ies), complaining to WPA by through Atem-Allam in June 2018, to Kane in early July 2018, and on July 20, 2018 to all of WPA, including that she had filed or was in the process of filing an EEOC Charge.

169.    Plaintiff suffered an adverse employment action(s), suspension on July 24, 2018 and termination on July 25, 2018. Plaintiff also suffered an adverse employment action because Defendant failed to investigate her race discrimination complaints in June and July 2018 and only, purportedly, did investigate after Plaintiff went to the EEOC.

170.    There is or are a casual connection(s) between Plaintiff's complaints of discrimination in June and July 2018, including about Fallick's racist comments, and, less than one month later, being suspended and terminated.

171.    WPA intended to retaliate and did retaliate on the basis of race or sex and/or because Plaintiff filed internal and external complaints.

172.    WPA's retaliation concerned one or more of the activities enumerated in the FCRA.

173.    As a result of the aforementioned conduct, WPA violated the FCRA.

174.    Any purported legitimate reason for Plaintiff's discipline given by WPA is, in reality, a pretext for unlawful retaliatory treatment.

175.    As a direct and proximate result of WPA's conduct, Plaintiff suffered adverse employment actions in reduction in hours and transfer resulting in her suffering injury and being damaged.

176.    WPA has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

177.    Plaintiff further alleges that she suffered from a hostile work environment and/or that WPA engaged in a pattern and practice of retaliation based on her race and/or that the violations of her rights were continuing in nature by WPA.

178.    As a direct and proximate result of WPA's willful, knowing, and intentional retaliation, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining WPA, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law;

(b) Award Plaintiff judgment against Defendants for compensatory damages as determined by the trier of fact;

(c)  Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits she would have received absent the retaliatory treatment;

(d)  Enter judgment for punitive damages against WPA; and

(e)  Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

SALAS LAW FIRM, P.A.

Respectfully submitted this 30th day of August, 2019.

> //s//John P. Salas, Esq.
> SALAS LAW FIRM, P.A.
> 8551 West Sunrise Boulevard
> Suite 300
> Plantation, FL 33322
> Office: (954) 315-1155
> Fax: (954) 452 -3311
> Email: jp@jpsalaslaw.com
> Fla. Bar. No. 87593
>
>
> //s//Michael G. Green II, Esq.
> SALAS LAW FIRM, P.A.
> 8551 West Sunrise Boulevard
> Suite 300
> Plantation, FL 33322
> Office: (954) 315-1155
> Fax: (954) 452 -3311
> Email:  michael@jpsalaslaw.com
> Fla. Bar. No. 60859